**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RAYMOND SHELTON, | : | |
| | : | |
| Petitioner, | : | Civil Action No. 14-1635 (JLL) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| DR. MERIL MAIN, et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

**LINARES**, District Judge:

    Presently before the Court is the petition for a writ of habeas corpus of Raymond Shelton ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging his involuntary commitment under the New Jersey Sexually Violent Predator Act (ECF No. 1), to which Respondents filed an answer. (ECF No. 9).  For the following reasons, the Court will deny the petition and no certificate of appealability shall issue.

## I.  BACKGROUND

    Petitioner is currently civilly committed to the Special Treatment Unit (STU) in Avenel, New Jersey, pursuant to New Jersey's Sexually Violent Predator Act (SVPA), N.J. Stat. Ann. § 30:4-27.24 et seq.  The facts relevant to Petitioner's petition for a writ of habeas corpus are set forth in the opinion of the Superior Court of New Jersey, Appellate Division, denying his challenge

to his civil commitment:[1]

>    The predicate offense which resulted in [Petitioner's] commitment arose on September 27, 1997, after [Petitioner] was released from prison in the spring of 1996 for another crime. On that day, [Petitioner] and his co-defendant carjacked two victims at gunpoint. Thereafter, the police attempted to pull the vehicle over for speeding and a high speed car chase ensued that ultimately resulted in a crash. Subsequently, the police recovered a semi-automatic gun from the vehicle.

>    On June 5, 1998, [Petitioner] pled guilty to carjacking, [in violation of N.J. Stat. Ann. §] 2C:15-2, and was sentenced to a twenty-year prison term with a ten-year period of parole ineligibility. On December 27, 2007, approximately a week prior to [Petitioner]'s parole eligibility date, the State filed a Petition for Civil Commitment under the SVPA.

>    On January 4, 2008, [Petitioner] was temporarily committed to the STU. After a probable cause hearing, the judge found [Petitioner] to be a sexually violent predator with a high likelihood of re-offending, and committed him to the STU for a period of twelve months. A full hearing was scheduled within twenty days, in accordance with [N.J. Stat. Ann. §] 30:4-27.29; however, appellant waived the twenty day hearing to pursue an interlocutory appeal. The hearing was thereafter set for a later date that year.

>    The present review was conducted on June 23 and 24, at which time Judge Serena Perretti considered the expert testimony and written reports of psychiatrist Howard Gilman, M.D., psychologist Timothy Foley, Ph.D.[,] and psychologist Rosemary Stewart, Psy.D.

>    According to the testimony and reports presented, [Petitioner] has had issues with sexual deviancy since as early as 1979, when he was charged with aggravated sexual assault and interference with custody of a child as a result of his relationship with a minor . . . who was eleven years old at the time. [Petitioner] pled guilty to second-degree sexual assault, [in violation of N.J. Stat.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), the factual determinations of the state courts are presumed to be correct, and Petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence.

Ann. §] 2C:12-2(a)(1).   [Petitioner] was sentenced to a seven-year prison term.

Upon release, [Petitioner] was allegedly involved in another crime that involved the death of a man and rape of a woman in his apartment.  On December 15, 1981, [Petitioner] was charged with homicide, [in violation of N.J. Stat. Ann. §] 2C:11-3, sexual assault, [in violation of N.J. Stat. Ann. §] 2C:14-2(c), terroristic threats, [in violation of N.J. Stat. Ann. §] 2C:12-3 and two counts of aggravated sexual assault, [in violation of N.J. Stat. Ann. §] 2C:14-2(a). [Petitioner] was acquitted of all charges after a jury trial.

[Petitioner]'s encounters with the law continued.   On January 28, 1984, a few weeks after being released following the acquittal, [Petitioner] was arrested and charged with the rape of M.C.  Police officers responded to the hospital emergency room where M.C. was admitted for injuries to her head, face and upper body.   She told the responding officers she had been tied to [Petitioner]'s headboard for approximately two days.   M.C. revealed that she had met [Petitioner] on the street and he invited her to his apartment to drink.   Later that evening, [Petitioner] refused to allow her to leave.   [Petitioner] then forced her to take off her clothes and struck her with a nightstick.   M.C. subsequently passed out and when she regained consciousness, she found herself tied to [Petitioner]'s headboard.   M.C. stated during her confinement, [Petitioner] had sex with her multiple times and repeatedly threatened to "dope her up" with a needle.

[Petitioner] claimed he met M.C. on the street and she asked him where she could purchase marijuana.   After purchasing wine and marijuana, M.C. went to [Petitioner]'s apartment where the two drank, smoked and had sex.   [Petitioner] claimed that M.C. then used his bathroom and attempted to steal money and jewelry from him, so he struck her with a nightstick.   The two then had sex again.

On September 17, [1984, Petitioner] pled guilty to aggravated sexual assault and was sentenced to twenty years in prison with a ten-year period of parole ineligibility.  Shortly after [Petitioner]'s release from custody for the sexual assault of M.C., he committed the carjacking offense and was incarcerated.

Dr. Gilman testified that [Petitioner] suffers from antisocial personality disorder and multiple substance dependence in

3

institutional remission. Dr. Gilman opined [Petitioner] is at high risk to sexually reoffend and that the affect such disorders have on [Petitioner], emotionally and cognitively, predispose him to commit acts of sexual violence. Dr. Gilman posited [Petitioner] would have serious difficulty controlling his sexually offending behavior as a result of his diagnoses as well as his history of sexually offending, lack of ability to conform to ethical and social norms, continued minimizations of his crimes and lack of treatment for sex offending or substance abuse.

According to Dr. Gilman, [Petitioner] scored eight on the Static-99R test indicating a high risk to reoffend. In calculating this score, Dr. Gilman included the acquitted homicide and rape charges from 1984 but testified that those charges only amounted to one point. Therefore, Dr. Gilman concluded that, even without including those charges, [Petitioner] would still be considered a high risk to offend.

Dr. Foley testified on behalf of [Petitioner]. He diagnosed [Petitioner] with polysubstance dependence and antisocial personality disorder. He offered, however, those diagnoses do not meet the statutory definition for mental abnormality or personality disorder as required by the SVPA, and he opined that [Petitioner] is not highly likely to commit sexually violent acts in the future. In reaching this determination, Dr. Foley relied upon the fact that [Petitioner] had no episodes of sexual misconduct over the last twenty-four years, the majority of which [Petitioner] spent incarcerated. Dr. Foley noted that he considered [Petitioner]'s relationship with the minor . . . in 1979 more than "just sexual exploitation" premised on the fact that [Petitioner] stated that [they] had an ongoing romantic relationship as well as a child together.

Dr. Foley acknowledged [Petitioner]'s high Static-99R score but opined that he felt it over-predicted [Petitioner]'s risk to reoffend given his age, as sex offense recidivism decreases with age and [Petitioner] is now in his fifties.

Dr. Stewart, the psychologist at the STU where [Petitioner] is admitted, also testified. She concurred that [Petitioner] suffers from polysubstance dependence and antisocial personality disorder. Dr. Stewart testified she conducted an interview with [Petitioner] and over the course of the interview, he admitted to abusing heroin, alcohol, marijuana and cocaine. [Petitioner] discussed his

4

discharge plans and indicated a desire to obtain employment and participate in substance abuse treatment. Dr. Stewart testified that from a traditional perspective, [Petitioner] remains at high risk to sexually reoffend without protective factors and supervision in place. Without such supervision, she would not recommend his release. Dr. Stewart also used [the] Static-99R to score [Petitioner] and found him to scale at a plus seven.

In continuing [Petitioner]'s civil commitment the [trial] judge found the testimony of Dr. Gilman to be credible and his diagnosis not disputed by any of the other experts. The judge found there was clear and convincing evidence that [Petitioner] suffers from an abnormal mental condition and personality disorder and, as such, was a sexually violent predator in need of commitment.

*In re Civil Commitment of R.S.*, No. A-51-08T2, 2013 WL 3367641, at *1-3 (N.J. App. Div. July 8), *certif. denied*, 77 A.3d 489 (N.J. 2013).

In continuing Petitioner's civil commitment pursuant to the SVPA, the state trial judge made the following findings.

All the persons testifying agree as to the diagnosis of this [Petitioner]. All agree that he is substance-dependent and has an anti-social personality disorder. All of the witnesses agree that these conditions combined and were in place at the time [Petitioner] committed his two sexually violent acts.

. . . .

It is clear and not disputed that this [Petitioner] committed his first sexually violent offense after previously having faced judicial proceedings. Upon release from prison on account of the [Petitioner]'s first sexually violent offense, he committed a second sexually violent offense within months of release and while on parole supervision . . . it is clear that the [Petitioner] cannot be deterred from sexually violent offenses by prior incarceration or supervision.

. . . .

The court is clearly convinced . . . that [Petitioner] is a

5

> sexually violent predator.   He suffers from a diagnosed condition .
> . . . [T]hese conditions predispose him to commit sexually violent
> acts . . . .
>
> [I]t is highly likely that the [Petitioner] will commit a
> sexually violent offense within the foreseeable future if he was not
> committed for treatment and for the protection of the public from
> the danger which he clearly presents.

*Id.* at *3.

Following the trial court's ruling recommitting him to the STU under the SVPA, Petitioner appealed to the New Jersey Appellate Division, challenging the sufficiency of the evidence used to commit him and raising the same additional three claims he makes before this Court.   (Exhibit D attached to ECF No. 9).   On July 8, 2013, the Appellate Division affirmed for substantially the same reasons placed on the record by the state trial court, finding that "the [trial] judge's findings are amply supported by substantial credible evidence" and that Petitioner's long history including multiple serious sexual offenses combined with his mental disorders amply supported the trial judge's conclusions.   *R.S.*, 2013 WL 3367641 at *4.   The Appellate Division likewise dismissed Petitioner's remaining claims, finding that they "lack[ed] sufficient merit to warrant discussion in a written opinion."   *Id.*   Petitioner filed a petition for certification to the New Jersey Supreme Court, which was denied on October 31, 2013.   *In re Civil Commitment of R.S.*, 77 A.3d 489 (2013).   Petitioner thereafter filed the instant habeas petition.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, --- U.S. ---, ---,132 S. Ct. 2148, 2151 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for the purposes of the statute where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to

7

afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## B. The New Jersey SVPA

The New Jersey Sexually Violent Predator Act provides a means for the state to civilly commit individuals who have been convicted of certain sexually violent offenses and therefore qualify as "sexually violent predators." N.J. Stat. Ann. § 30:4-27.26. Under the act, a sexually violent predator is a

> Person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J. Stat. Ann. § 30:4-27.26(b). "When it appears that a person may meet the criteria of an SVP, an "agency with jurisdiction," such as the New Jersey Department of Corrections, provides notice to the New Jersey Attorney General at least ninety days before the anticipated release of this individual." *Greenfield v. Dep't of Corr.*, Civil Action No. 09-1969, 2011 WL 3203730, at *6 (D.N.J. July 27, 2011) (citing N.J. Stat. Ann. §§ 30:4-27.26; 3:4-27.27(a)(1)). Upon receiving such notice, the Attorney General, if he concludes that public safety warrants involuntary civil commitment of the individual involved, may bring an action for commitment under the SVPA.

8

*Id.* Under the statute, such an involuntary commitment procedure may follow from the release of an offender from jail so long as the offender suffers from a requisite mental abnormality or personality disorder and the offender is therefore likely to engage in acts of sexual violence if not confined in a secure treatment facility.   N.J. Stat. Ann. §§ 30:4-27.26; 30:4-27.28; 30:4-27.32(a).

To initiate the commitment of an individual being released from imprisonment, the Attorney general must file a petition for commitment, supported by "two clinical certifications, one of which must be from a psychiatrist who has examined the individual no more than three days before the submission of the petition for commitment." *Greenfield*, 2011 WL 3203730 at *6 (citing N.J. Stat. Ann. §§ 30:4-27.26, 30:4-27.28).   Upon the filing of such a petition, the trial court conducts a temporary commitment hearing where that court examines the supporting certificates and must determine if probable cause exists to believe that the committee qualifies as a sexually violent predator under the act.   *Id.*   If the court finds probable cause, it issues a temporary commitment order pending a final hearing, which is normally scheduled within twenty days of the initial hearing.   *Id.*; N.J. Stat. Ann. §§ 30:4-27.28(f), 30:4-27.29(a).

In advance of the final hearing, the committee is provided with copies of the clinical certificates and their supporting documents, the temporary commitment order, and a statement of the committee's rights at the final hearing.   N.J. Stat. Ann. § 30:4-27.30(a).   Those rights include the right to counsel and the appointment of counsel if the committee is indigent, the right to be present during the final hearing absent prior conduct which would prevent the court from reasonably conducting the hearing in the committee's presence, the right to present evidence, the right to cross-examine witnesses, and the right to a hearing in camera.   *Greenfield*, 2011 WL 3203730 at *6 (citing N.J. Stat. Ann. § 30:4-27.31).   Following the appointment of counsel where

necessary, the final hearing is conducted. *Id.* At that hearing, the trial court hears evidence, including expert testimony from psychiatrists and members of the treatment team who have treated the committee during his temporary commitment who have within the last five days prior to the hearing conducted a personal examination of the committee. *Id.* If the court, following the hearing, concludes by clear and convincing evidence that the committee qualifies as an SVP, the court issues an order involuntarily committing the SVP to the STU. *Id.* The SVP may thereafter appeal the court's order or petition for discharge from the STU at any time, and by statute will receive annual review hearings at which the state is again required to prove by clear and convincing evidence that commitment as the SVP is warranted. *Id.* (citing N.J. Stat. Ann. §§ 30:4-27.35, 30:4-27.36). Although an individual's commitment as an SVP often follows the end of a criminal sentence, such commitment is civil, and not criminal in nature. *See Araunno v. Hayman*, 284 F. App'x 144, 150 (3d Cir.); *cert. denied*, 131 S. Ct. 835 (2010).

## C.   Analysis

Petitioner raises three claims in his habeas petition, all of which were previously rejected on the merits by the New Jersey state courts: that his commitment under the SVPA was improper as the sentence from which he was being released was not a sexual offense and his resulting commitment was therefore not supported by the evidence as the state could not show that he presently poses a significant threat of harm for sexual re-offense, that Petitioner's commitment under the SVPA was improper as the parole board had already determined that Petitioner was not likely to reoffend as part of its decision to conditionally release Petitioner and the Attorney General's resort to the use of the SVPA circumvented the proper procedure for appealing a parole

board determination, and that the state courts erred in concluding that the state had proven by clear and convincing evidence that Petitioner qualified for commitment as an SVP.   As Petitioner's first and third claims both argue that, under the circumstances, the trial court's conclusion that Petitioner should be committed was not supported by the evidence, this Court will examine those claims together.   This Court will first examine Petitioner's second claim, however.

## 1.   Petitioner's claim that the State improperly used the SVPA to circumvent the proper procedure for appealing a parole board determination

Petitioner argues that as he was conditionally released by the New Jersey Parole Board, the Attorney General's decision to commit him as an SVP rather than to appeal the Parole Board's decision to the Appellate Division violated his Due Process rights.   Petitioner's argument is couched in his assertion that the SVPA was "not intended to allow the Attorney General means to override a decision of the parole Board with which he disagrees, but was intended to be employed in situations where there was not [an]other determination by a concomitant part of the executive branch regarding the danger by the presence of an individual in the community."   (ECF No. 1 at 12).   The inherent flaw in Petitioner's argument serving as a means for relief in a federal habeas corpus case is that Petitioner is essentially arguing that the state courts misapplied New Jersey law.

"Federal habeas corpus relief does not lie for errors of state law."   *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997); *Smith v Horn*, 120 F.3d 400, 414 (3d Cir. 1997); *Greenfield*, 2010 WL 3203730 at *4.   Relief may be obtained in a federal habeas case only for violations of the Constitution, laws, or treaties of the United States.   *McGuire*, 502 U.S. at 68.   It "is not the province of a federal habeas court to

reexamine state-court determinations on state-law questions." *Id.* at 67-68.   As such, "[e]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." *Johnson*, 117 F.3d at 110.   As Petitioner's claim is that the state court erred in construing state laws, both those establishing state parole procedures and the SVPA, Petitioner's claim cannot be repackaged as a Due Process claim and is not a cognizable basis for relief in a federal habeas petition.   *Id.*

While this conclusion is dispositive of Petitioner's claim, this Court also notes that Petitioner's assertion, as a matter of state law, appears to be wholly incorrect.   While Petitioner asserts that the SVPA was intended only to apply in the absence of a parole board determination that an individual was likely to reoffend, and thus could only be used for prisoners who did not receive parole, that assertion is contradicted by the text of the SVPA.   The SVPA is not so limited as it provides the Attorney General with the ability to initiate a court proceeding against any individual qualifying as an SVP even where that individual has long since been released from prison.   *See* N.J. Stat. Ann. § 30:4-27.28(b).   The statute further provides that the Attorney General's authority to initiate commitment procedures under the state's *parens patriae* power extends to "any person" who qualifies as a sexually violent predator under the act.   N.J. Stat. Ann. § 30:4-27.28(d); *see also In re Civil Commitment of M.L.V.*, 909 A.2d 286, 292 (N.J. App. Div. 2006) (in "the SVPA, the Legislature imposed no limitation on the State's *parens patriae* power to protect the public from the potential dangers posed by sexually violent predators.   To the contrary, the Legislature clearly intended [the act] to re-affirm the Attorney General's broad power to seek the commitment of 'any person' in order to protect the public."), *certif. denied*, 919 A.2d 848 (N.J. 2007).

That the Attorney General could have sought the continued incarceration of an individual through an appeal of a parole board determination in no way limits the Attorney General's ability to alternatively seek commitment under the SVPA. *M.L.V.*, 909 A.2d at 292-93. The civil commitment of an individual as an SVPA is an entirely separate civil proceeding from the parole board's determination, and there is no requirement under New Jersey Law that the Attorney General appeal a parole decision before he may initiate an SVP proceeding. *Id.* As such, it appears that even were Petitioner's claim cognizable in a federal habeas proceeding, the state courts did not err in their determination of state law. As Petitioner has provided no Supreme Court case law with which such a ruling conflicts, this claim provides no basis for habeas relief.

**2. Petitioner's claim that the state failed to prove by clear and convincing evidence that he was subject to commitment as an SVP**

In his remaining points, Petitioner argues, for varying reasons, that the state courts erred in concluding that he was a sexually violent predator in need of the commitment under the SVPA. Essentially, these arguments are attempts by Petitioner to argue that the state courts' rulings were based on an unreasonable application of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2). As Petitioner is attacking the factual determinations of the trial court, he can only succeed if he can present clear and convincing evidence which would rebut the presumption that the state court's factual conclusions were correct. 28 U.S.C. § 2254(e)(1).

Petitioner first argues that, because he was most recently convicted of carjacking, and not a sexual offense, the record does not support his commitment as a sexually violent predator. As previously discussed, the SVPA permits the Attorney General to seek the commitment of any

13

individual who qualifies as a sexually violent predator.   To meet that requirement, the Attorney General must show that the person to be committed "has committed a sexually violent offense, without regard to when the offense was committed or whether the person is currently incarcerated for that offense."   *See In re Commitment of P.Z.H.*, 873 A.2d 595, 598 (N.J. App. Div. 2005). Nothing in the SVPA requires that a person be imprisoned for a sexual offense at the time commitment is sought.   *Id.* at 599.   Indeed, a person need not be imprisoned at all.   *Id.* "Regardless of the date of the last predicate act, the constitutionally-mandated touchstone of the Act is proof by clear and convincing evidence that the person *currently* suffers from a mental condition that makes him or her a sexually violent predator and *currently* presents a high likelihood of committing sexually violent acts if not committed."   *Id.* at 600; *see also In re Commitment of W.Z.*, 801 A.2d 205, 218-19 (N.J. 2002).   Under the Act, the remoteness of the last sex offense "may be relevant to that inquiry, [but] it may also be insignificant.   Where, for example, a sex offender has been incarcerated for most of the time between the predicate act and the commitment proceeding, the absence of recent offenses may simply be due to lack of opportunity."   *P.Z.H.*, 873 A.2d at 600.

Petitioner's history presents just such a case.   Although Petitioner was most recently incarcerated for carjacking, he has a history including two sexually violent offenses for which he was convicted: sexual assault in 1979 and aggravated sexual assault in 1984.   *R.S.*, 2013 WL 3367641, at *1-2.   During the brief period between the two offenses during which Petitioner was not in prison, Petitioner was arrested and held on other charges of which he was acquitted. Petitioner, between 1979 and 1984, therefore had little opportunity to commit further offenses. *Id.*   Petitioner likewise committed the carjacking offense within weeks of being released for

14

aggravated sexual assault. *Id.*  Thus, that Petitioner has not reoffended sexually since 1984 appears, as the state courts concluded, to be the result of a lack of opportunity rather than any reduction in the danger which Petitioner presents to the public were he released.  Thus, Petitioner's argument that his having been incarcerated for carjacking renders him unable to be "currently likel[y]" to reoffend is insufficient in and of itself to rebut the presumption that the state courts' factual findings were correct.

Petitioner next argues that the trial court erred in its determination by failing to give deference to the decision of the parole board paroling him for his carjacking offense and to the experts who testified on his behalf during the final commitment hearing.  As to the former, this Court notes that the parole board's decision did not consider directly the same issues in so much as it related to Petitioner's carjacking offense and was not directed to the questions central to an SVP determination: that Petitioner had a requisite mental abnormality and a high likelihood of sexual re-offense without treatment.  Likewise, as previously stated, as the SVP commitment proceeding is wholly separate from any parole board determination, there is no requirement that the committing court be bound by a parole board decision.  *M.L.V.*, 909 A.2d at 292-93.

As to the latter argument, the trial court, and the affirming appellate court, considered the testimony of all three experts who testified at Petitioner's commitment hearing.  All three experts testified that Petitioner suffered from some form of substance abuse or dependence disorder and from antisocial personality disorder.  *R.S.*, 2013 WL 3367641, at *2-3.  All three experts likewise testified to or acknowledged that Petitioner scored highly on the Static-99R actuarial test and was therefore deemed likely to reoffend under that test.  *Id.*  Although Petitioner's expert, Dr. Foley, downplayed Petitioner's likelihood to reoffend, both Drs. Gilman and Stewart testified that,

15

without some form of supervision or treatment in place, Petitioner was at a high risk to reoffend. *Id.* Of those two witnesses, the trial court concluded that Dr. Gilman, who testified that Petitioner was highly likely to reoffend without treatment in a secured facility, was most credible. *Id.*

Given the extreme nature of the sexual offenses for which Petitioner was convicted, the testimony of all three experts regarding Petitioner's substance abuse and antisocial personality disorders, and the testimony of Dr. Gilman that Petitioner was highly likely to reoffend if not committed which the trial court found credible, Petitioner has failed to provide sufficient evidence to overcome the presumption that the trial court's findings of fact, that Petitioner had the requisite personality disorders and was highly likely to reoffend, were correct. As the evidence presented during the final commitment hearing fully supports the conclusion that Petitioner has a requisite mental abnormality, has committed two sexual offenses qualifying him as an SVP, and is highly likely to reoffend in the future; Petitioner has likewise failed to show that the state courts' decisions were based on an unreasonable determination of the facts presented. Petitioner has therefore failed to show that he is entitled to habeas relief on those bases.

Petitioner's final argument is essentially that, given the facts of his case, his commitment runs afoul of the Supreme Court's holding in *Kansas v. Crane*, 534 U.S. 407, 412-13 (2002). In *Crane*, the Supreme Court determined that, in order to civilly commit an individual as a sexually violent predator under the Kansas SVPA, the state courts were required to make some determination that a committee's mental abnormalities left the committee with at least a partial lack-of-control over his actions. *Id.* The Court's determination was based on the requirement in the Kansas Act, upheld in *Kansas v. Hendricks*, 521 U.S. 346 (1997), that a potential SVP's "mental abnormality" or "personality disorder" make it "difficult, if not impossible, [for the . . .

16

person to control his dangerous behavior." *Crane*, 534 U.S. at 411.   The Court in *Crane* rejected the argument that an SVP determination required a finding of a total or complete lack of control, but held that an SVP finding could not be made "without *any* lack-of-control determination." *Id.* at 412.   The Court, in so ruling, however, noted that lack of control could not be demonstrated "with mathematical precision" and that it would be constitutionally sufficient where there was proof of a "serious difficulty in controlling behavior." *Id.* at 413.   Such a finding would likewise be required to distinguish a dangerous sexual offender whose serious mental issues subject him to commitment from "the dangerous but typical recidivist convicted in an ordinary criminal case." *Id.*

Petitioner's argument rests on the observation in *Crane* that "40%-60% of the male prison population is diagnosable with antisocial personality disorder." *Id.* at 412 (citing Moran, The Epidemiology of Antisocial Personality Disorder, 34 Social Psychiatry & Psychiatric Epidemiology 231, 234 (1999)).   Petitioner takes that observation, as did his expert witness in the trial court, to mean that antisocial personality disorder alone is not enough to warrant commitment as an SVP.   Petitioner's argument ignores the fact that the New Jersey SVPA requires, and the state courts found, more than the mere presence of antisocial personality disorder.   Indeed, the SVPA is directly in line with the lack of control requirement of *Crane* in so much as it requires not only a mental abnormality, but one which causes the committee to be currently highly likely to reoffend absent treatment of that abnormality. *See W.Z.*, 801 A.2d at 218-19; *R.S.*, 2013 WL 3367641, at *2-3.   Thus, under the New Jersey SVPA, a finding of lack of control is required for commitment as an SVP, and the state courts here made such a determination, finding by clear and convincing evidence that Petitioner's substance abuse/dependence and antisocial personality

17

disorder specifically rendered him highly likely to sexually reoffend in the near future absent commitment and treatment. *R.S.*, 2013 WL 3367641, at *2-3. The SVPA also requires, and the state courts here found, additional facts which would differentiate Petitioner and those like him from the ordinary convict: that he has previously been convicted of sexual offenses, and that he suffers a sufficient mental abnormality which specifically renders him likely to reoffend by committing further sexual offenses. *Id.*; *see also W.Z.*, 801 A.2d at 218-19. The state courts' rulings therefore do not present an unreasonable application of *Crane*. As Petitioner has shown neither that the state courts' ruling presented an unreasonable application of federal law, nor that the state courts' rulings were based on an unreasonable application of the facts presented during the final commitment hearing, Petitioner has failed to show that he is entitled to habeas relief, and this Court will deny his petition.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right as jurists of reason could not disagree with this Court's resolution of his claims and he has not shown that the issues presented are adequate to deserve encouragement to proceed

18

further. No certificate of appealability shall therefore issue.


## IV. CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED, and no certificate of appealability shall issue.   An appropriate order follows.


Hon. Jose L. Linares,
United States District Judge